CHARLES J. PHILLIPP, TRANSFEREE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent JOSEPHINE D. PHILLIPP, TRANSFEREE, AND JOSEPHINE D. PHILLIPP, EXECUTRIX OF THE ESTATE OF AMBROSE F. PHILLIPP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Phillipp v. Commissioner
Docket Nos. 5028-76, 5029-76.
United States Tax Court
T.C. Memo 1977-126; 1977 Tax Ct. Memo LEXIS 314; 36 T.C.M. (CCH) 549; T.C.M. (RIA) 770126; May 2, 1977, Filed *314 Ronald H. McConnell, for the petitioners. Robert N. Armen, Jr., for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent determined an assessment against Charles J. Phillipp in the amount of $4,921.14 as his liability as a transferee of property of the Estate of Ambrose F. Phillipp for "deficiency interest due on estate tax." He also determined an assessment against Josephine D. Phillipp in the same amount which constituted her "personal liability as a fiduciary for deficiency interest due on estate tax from the Estate of Ambrose F. Phillipp" and her liability as a transferee of property of said estate. The facts in these cases are fully stipulated. The ones which we consider necessary to the decision will be briefly set out below. As we understand it, the crux of the controversy is contained in paragraph 2 of the Stipulation of Facts which is as follows: Charles J. Phillipp and Josephine D. Phillipp are liable as beneficiaries and transferees of the Estate of Ambrose F. Phillipp, and Josephine D. Phillipp, Executrix, is personally liable under 31 U.S.C. sec. 192 as the fiduciary of the Estate of Ambrose *315 F. Phillipp, for statutory interest in respect of the estate tax deficiency of said estate, as set forth in the notice of liability, unless, however, respondent is estopped for [sic] assessing said interest against said individuals by virtue of the doctrine of laches. The chronology in which the parties are involved follows. The decedent, Ambrose F. Phillipp, died on July 19, 1971. The estate tax return in respect of the Estate of Ambrose F. Phillipp was timely filed with the respondent on April 14, 1972. The estate tax examination of the estate tax return referred to in the preceding paragraph did not commence until November 11, 1973. As a result of this examination, respondent determined that there was a deficiency in estate tax in the amount of $35,376.05. This deficiency was assessed on November 11, 1974. On that same date, statutory interest (computed through August 13, 1974) in the amount of $4,921.14 was also assessed. (This is the basic amount here in controversy.) On August 16, 1974, Josephine D. Phillipp, Executrix of the Estate of Ambrose F. Phillipp, executed Form 890 (Estate Tax Waiver of Restrictions on Assessment and Collection of Deficiency *316 and Acceptance of Overassessment) and agreed thereby to an estate tax deficiency in the amount of $35,376.05. On August 13, 1974, prior to the assessment date and prior to the execution of Form 890, payment in the amount of $35,376.05 was received by respondent in respect of the estate tax deficiency referred to above. Further, the respondent stipulates "that [neither] Charles J. Phillipp [nor] Josephine D. Phillipp committed fraud or misrepresentation in respect of the estate tax return filed in respect of the Estate of Ambrose F. Phillipp or in connection with respondent's subsequent examination thereof." Petitioner's argument and conclusion on brief follow: Considering the foregoing chronology, it is petitioner's position that in the confusion generated by the change in filing deadlines, many Form 706 filings must have become mislaid or misplaced resulting in an inordinate and inexcusable delay in reaching each case for audit. Irrespective of the time required by respondent to conduct its audit, there can be no justification of the nineteen month delay in simply reaching this return for audit. Petitioners' posture is that while respondent is entitled to a reasonable *317 time in which to conduct its audit--almost one year in this case--it is not entitled to pursue a course of complete inactivity for nineteen months and then attempt to enrich itself at petitioners' expense by charging interest for that period of inactivity, to say nothing about the hardships visited upon the heirs by virtue of the delay in the distribution of assets. This unconscientable [sic] delay, in even the commencement of the audit, must be held to be an unreasonable taking of petitioners' property (interest) without due process of law--a "taking" which is arbitrary, without reason, without factual or legal support, in excess of authority beyond the limits of justifiable discretion and tinged with bad faith. No authority is cited to sustain this position. We do not hold this lack of citation against petitioners. There may be cases where there are no bolstering precedents and where none are needed. We do not think these are such cases. On this record, every action taken by respondent was timely and within the limitations imposed by the Internal Revenue Code of 1954. Petitioners may well have been exasperated by the time lapse before the Internal Revenue Service *318 got to these particular cases. But there is not a thing in this record to indicate that this came about through bad faith or deliberate inactivity on the part of the taxing authorities, or that it was in any way illegal. The taking of property without due process of law argument is frivolous. Petitioners have had the disputed amount and its use in the interim. Nothing has been taken from them. The respondent argues that "The equitable doctrine of laches has no application to these cases," citing United States v. Summerlin,310 U.S. 414, 416 (1940) and Olshausen v. Commissioner,273 F.2d 23, 28 (9th Cir. 1959), [1] where it was held that the United States is not subject to the defense of laches. We agree with respondent. Decisions will be entered under Rule 155. Footnotes
1. Also see Geller v. Commissioner,T.C. Memo. 1976-257↩.